## UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

**LUCIANO VARGAS LOPEZ,**

                         Plaintiff-Petitioner,

v.

**DONALD J. TRUMP,** in their official capacity as President of the United States;
**KRISTI NOEM,** in their official capacity as Secretary of the United States Department of Homeland Security;
**ALLEN GILL,** in their official capacity as Field Office Director of Omaha office of United States Immigration and Customs Enforcement
**PAMELA BONDI,** in their official capacity as Attorney General of the United States;
**TODD M. LYONS,** in their official capacity as Acting Director of the United States Immigration and Customs Enforcement;
**PETER BERG,** in their official capacity as St. Paul Field Office Director for Enforcement and Removal Operations, United States Immigration and Customs Enforcement; and,
**JEROME KRAMER,** in their official capacity as Dakota County Sheriff, Official of Dakota County Detention Center;

                 Defendant-Respondents.

Case No. _____

**PETITION FOR HABEAS CORPUS**

1

## INTRODUCTION

1. This lawsuit seeks the immediate release of Plaintiff-Petitioner Luciano Vargas Lopez ("Petitioner") from unlawful detention in violation of his constitutional and statutory rights.

2. Petitioner was detained following a traffic stop in Sioux City, Iowa, on June 24, 2025, and remains in civil detention in the custody of the Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") at the Dakota County Jail in Dakota City, Nebraska.

3. Petitioner has been in the United States for over 20 years and is the father of a United States citizen. His father is a United States citizen, and his mother is a lawful permanent resident of the United States. He lives with and supports his family in Hawarden, Iowa. This detention is a substantial deprivation and burden that puts Petitioner and his family at risk without his parental and financial support.

4. Petitioner has a pending ticket for driving without a license, has one previous ticket for driving without a license, and has never failed to appear in any criminal or immigration proceedings.

5. Petitioner's detention became unlawful on August 5, 2025, when Petitioner was granted release on bond by an Immigration Judge ("IJ"), but not released from custody at the Dakota County Detention Center. Ex. 1, Order of the Immigration Judge (August 5, 2025). His continued detention is an unlawful violation of due process, an incorrect interpretation of immigration law, and is *ultra vires*.

2

6. Petitioner is represented in immigration removal proceedings by counsel. Petitioner's immigration counsel is also representing Petitioner in his application for non-LPR cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(1) as he has been physically present in the United States for at least 10 years and been a person of good moral character during that period. Moreover, he has no disqualifying criminal charges or convictions, and he has a US citizen child and parents upon whom his removal would cause exceptional and extremely unusual hardship. Petitioner is also prima facie eligible for withholding of removal.

7. Petitioner respectfully requests that this Court grant the instant petition for a writ of habeas corpus under 28 U.S.C. § 2241 and enjoin Respondent's continued detention of Petitioner to ensure his due process rights and his ability to provide care for his child, and his elderly parents, who have needs that require Petitioner's presence and support. In the alternative, he respectfully requests that the Court order Respondents to show cause why this Petition should not be granted within three days.

## JURISDICTION AND VENUE

8. Petitioner is detained in civil immigration custody at Dakota County Detention Center in Dakota City, Nebraska. He has been detained since approximately June 24, 2025.

9. This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*

3

10. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and, where applicable, Article I § 9, cl. 2 of the United States Constitution (Suspension Clause). This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

11. Venue is proper in the District of Nebraska under 28 U.S.C. § 1391, because at least one Defendant is in this District, Petitioner is detained in this District, and a substantial part of the events giving rise to the claims in this action took place in this District. Venue is also proper under 28 U.S.C. § 2243 because the immediate custodians of Petitioner reside in this District.

## REQUIREMENTS OF 28 U.S.C. § 2243
### Writ Of Habeas Corpus Issuance, Return, Hearing, and Decision

12. The Court either must grant the instant petition for writ of habeas corpus or issue an order to show cause to Respondents, unless Petitioner is not entitled to relief. If the Court issues an order to show cause, Respondents must file a response "within three days" unless this Court permits additional time for good cause, which is not to exceed twenty days. 28 U.S.C. § 2243.

13. Habeas corpus is "perhaps the most important writ known to constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 US 391, 400 (1963) (emphasis added). "The writ of habeas corpus, challenging illegality of detention, is reduced to a sham if the trial courts do not act within a reasonable time." *Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978).

4

14. Due to the nature of this proceeding, Petitioner asks this Court to expedite proceedings in this case as necessary and practicable for justice.

## **PARTIES**

15. Petitioner is 34 years old. He was born in Guatemala and came to the United States in 2013. Before his detention, he was living with and supporting his U.S. citizen child and his wife in Omaha, Nebraska. Petitioner is the subject of a removal proceeding based upon the charges of being present in the US without being "admitted or paroled, or who arrived in the [U.S.] at any time or place other than as designated by the Attorney General" under INA § 212(a)(4)(A)(i), codified at 8 U.S.C. § 1182(a)(4)(A)(i). He has been in civil immigration detention since June 10, 2025.

16. Respondent Donald J. Trump is named in their official capacity as President of the United States. In this capacity, they are responsible for the policies and actions of the executive branch, including the Department of State and Department of Homeland Security.

17. Respondent Marco Rubio is named in their official capacity as the U. S. Secretary of State. In this capacity, among other things, they have the authority to determine, based on "reasonable" grounds, that the "presence or activities" of a noncitizen "would have serious adverse foreign policy consequences for the United States."

18. Respondent Kristi Noem is named in their official capacity as the Secretary of the US Department of Homeland Security. DHS is a department

of the executive branch of the US government that is tasked with, among other things, administering and enforcing the federal immigration laws. Secretary Noem is ultimately responsible for the actions of ICE; specifically, they are responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a). Secretary Noem is legally responsible for any effort to detain and remove the Petitioner, and as such is a legal custodian of the Petitioner.

19. Respondent Todd M. Lyons is named in their official capacity as the Acting Director of US Immigration and Customs Enforcement. ICE is the agency within DHS that is specifically responsible for managing all aspects of the immigration enforcement process, including immigration detention. ICE is responsible for apprehension, incarceration, and removal of noncitizens from the United States, and as such, Acting Director Lyons is a legal custodian of Petitioner.

20. Respondent Pamela Bondi is named in their official capacity as the US Attorney General. Attorney General Bondi is responsible for continuing a custody case against a noncitizen under 8 CFR § 1003.6(d)

21. Respondent Peter Berg is named in their official capacity as the Field Office Director for the St. Paul Field Office of ICE. Director Berg is responsible for the enforcement of the immigration laws within this district and for ensuring that ICE officials follow the agency's policies and procedures. Director Berg is a legal custodian of Petitioner.

6

22. Respondent Allen Gill is the Assistant Field Office Director for the Omaha Immigration and Customs Enforcement, Enforcement and Removal Operations, who has direct control over the Petitioner's detention and is named in his official capacity.

23. Respondent Jerome Kramer is named in their official capacity as the Sheriff of Dakota County and the Official of the Dakota County Detention Center. They have immediate physical custody of Petitioner pursuant to an agreement with ICE to detain noncitizens and is a legal custodian of Petitioner.

### FACTUAL ALLEGATIONS

24. Petitioner was detained during an enforcement action at Glenn Valley Foods in Omaha, Nebraska on June 10, 2025.

25. Petitioner was initially detained without bond by DHS "[p]ursuant to the authority contained in section 236" of the INA. Ex. 2, Notice of Custody Determination (June 11, 2025). Section 236 of the INA, found at 8 U.S.C. § 1226, and noncitizens held under its authority have a right to have their custody determination reviewed by an IJ. *See id.*

26. The Immigration Judge held a custody redetermination hearing on July 10, 2025, and counsel for ICE argued that Petitioner was not entitled to bond due to the government's assertion that he was detained pursuant to 8 U.S.C. § 1225(b)(2), rather than 8 U.S.C. § 1226. The IJ determined that Petitioner was eligible for bond under 8 U.S.C. § 1226 and ordered Petitioner's release upon posting bond for $10,000.00. See Exh. 1. The IJ's written bond decision states that she has jurisdiction, that the Petitioner has resided in the

7

United States for a significant amount of time, has family ties, and any flight risks concerned could be alleviated by the posting of a $10,000 bond. In addition the IJ specifically found that the Petitioner's detention was following a targeted arrest and investigation. See Exh. 2.

27. Petitioner's family members attempted to post the entire amount of bond funds in accordance with the IJ's order, on behalf of Petitioner; each time they received a denial through the bond processing system "ICE CeBonds" with a comment of E43 filed bond not permitted. The Respondent's family remains prepared and able to post the bond funds to secure Petitioner's release consistent with the IJ's custody order.

28. It has been widely reported that ICE internally released "interim guidance" regarding a change in their longstanding interpretation of which noncitizens are eligible for release on bond; specifically, ICE is now arguing that only those *already admitted* to the US (typically requiring lengthy legal efforts with representation of counsel, such as adjusting status to a legal permanent resident or refugee) are eligible to be released from custody during their removal proceedings, and that all others are treated subject to 8 U.S.C. § 1225, instead of 8 U.S.C. § 1226, and will remain detained with only extremely limited parole options *at ICE's discretion*. Ex. 5, Interim Guidance Regarding Detention Authority for Application for Admission (July 8, 2025). This is a reversal of ICE's established practice of releasing from custody the vast majority of noncitizens in removal proceedings not deemed to be a flight risk or a danger to the community.

29. This novel interpretation means that millions noncitizens who entered

8

the United States without inspection (who have not already been formally admitted or paroled) that are contacted by ICE in the interior of the US will be treated as if they were an "arriving alien" at the border and subject to mandatory detention, regardless of how long they have been present in the United States or other equities (such as complete lack of criminal history or US citizen family members including dependent children). ICE will now argue all of these noncitizens are not even entitled to a bond hearing by an IJ on the issue of release from custody during the pendency of removal proceedings.

30. ICE filed a Notice of ICE Intent to Appeal Custody Redetermination ("EOIR-43") of the IJ's order that Petitioner is eligible for bond and order for his release from custody on bond on July 10, 2025. Ex. 3 Notice of Intent to Appeal (July 15, 2025).

31. The filing of the EOIR-43 invoked the automatic stay provision of 8 U.S.C. § 1003.19(i)(2), which reflects its reversal of interpretation of bond eligibility.

32. ICE filed a Notice of Appeal from a Decision of an Immigration Judge("EOIR-26") confirming that their position at the custody hearing and the basis of their appeal is ICE's reversal of interpretation and application of 8 U.S.C.§ 1225. Ex. 4, Notice of Appeal (July 16, 2025).

33. Despite the IJ's order for Petitioner's release on bond, he continues to be detained, separated from his family and community. This is having an extreme detrimental effect on his young children who are old enough to understand that their father is in jail but not old enough to understand why

9

when he has not committed any crimes.

34. In addition, Petitioner is unable to support and provide for his family because he is detained and unable to continue as a breadwinner. His elderly parents are suffering due to the lack of communication with their son and the added burden of trying to maintain their household without their primary income.

35. Petitioner's continued detention separates him from his family, prohibits him from being able to provide important support to his family, and inhibits his removal defense in many ways, including making it difficult to communicate with witnesses, gather evidence, and afford legal representation among other harms. Filing for cancellation of removal requires providing a large body of proof including proof of presence for ten years, proof of tax filing, and proof of hardship to qualifying family members. The Petitioner's case for relief is highly damaged when he does not have access, and must assign access legally to obtain the proof that is required.

36. Despite having a reasoned IJ decision ordering Petitioner's release and return to his family and community upon posting bond, he remains detained away from his family, counsel, and support system and continues to be subjected to the aforementioned harms.

## LEGAL FRAMEWORK

### Due Process Clause

37. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 US 510, 523 (2003) (quoting *Reno v. Flores*, 507 US 292, 306 (1993)). "Freedom from

imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

38. Due Process requires "adequate procedural protections" ensrruing that the governement's asserted justification for the noncitizen's confinement are balanced to protect the constitutional protection in avoiding physical restraint. *Id.* at 690. The Supreme Court determined that the two proper purposes for civil detention were: preventing flight and mitigating the risks of danger to the community. *Zadvydas*, 533 US at 690; *Demore*, 538 US at 528. A noncitizen may only be detained based on these two justifications if they are otherwise statutorily eligible for bond. *Zadvydas*, 533 US at 690.

39. "The fundamental requirement of due process is the opportunity be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 US 319, 333 (1976). To determine what process Petitioner is due, this Court should consider (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of that private interest, and the extent to which that risk could be reduced by additional safeguards; and (3) the government's interest in maintaining the current procedures, including the governmental function involved and the fiscal and administrative burdens that the substitute procedural requirement would entail. *Id.* at 335.

**Immigration and Nationality Act**

40. Title 8 of the United States Code, Section 1221 *et seq.*, controls the

11

United States Government's authority to detain noncitizens during their removal proceedings.

41. The INA authorizes detention for noncitizens under four distinct provisions:

    1) **Discretionary Detention**. **8 U.S.C. § 1226(a)** generally allows for the detention of noncitizens who are in regular, non-expedited removal proceedings; however, permits those noncitizens who are not subject to

mandatory detention to be released on bond or on their own recognizance.

2) **Mandatory Detention of "Criminal" Noncitizens**. **8 U.S.C. § 1226(c)** generally requires the mandatory detention of noncitizens who are removable because of certain criminal or terrorist-related activity after they have been released from criminal incarceration.

3) **Mandatory Detention of "Applicants for Admission." 8 U.S.C. § 1225(b)** generally requires detention for noncitizen applicants for admissions, such as those noncitizens arriving in the US at a port of entry or other noncitizens who have not been admitted or paroled into the US and appear subject to removal from the US..

4) **Detention Following Completion of Removal Proceedings**. **8 U.S.C. § 1231(a)** generally requires the detention for noncitizens who are subject to a final removal order during the 90-day period after the completion of removal proceedings and permits the detention of certain noncitizens beyond that period. *Id.* at § 1231(a)(2), (6).

42. The instant case concerns the detention provisions at §§ 1226(a) and 1225(b).

43. Both detention provisions, §§ 1226(a) and 1225(b), were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–, 3009–585. Section 1226(a) was most recently amended earlier this year by the Riley Act, Pub. L. No.119-1, 139 Stat.3 (2025).

44. Following enactment of the IIRIRA, the Executive Office for Immigration Review drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225(b) and that they were instead detained under § 1226(a) after an arrest warrant was issued by the Attorney General. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (March 6, 1997)("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) *will be eligible for bond and bond redetermination*") (emphasis added).

45. For nearly thirty years, ICE and Executive Office for Immigration Review, under DHS, held most apprehended noncitizens in the interior of the United States for over two years. If deemed non-dangerous and a flight risk, they were released from detention on their own recognizance or paid the IJ-determined bond amount. 8 U.S.C. § 1226(a)(2)(A). *See* Ex. 8, Declaration of Kerry Doyle (August 12, 2025) (explaining the decades long practice of not filing automatic stays regarding bond determinations).

46. recently reversed its policy and now treats all noncitizens contacted in the interior of after entry as "arriving," regardless of their case specifics. These specifics, historically relevant to custody determinations,

include when, why, or how they entered, criminal convictions, community danger or flight risk, medical conditions, family dependency, and community best interest. ICE argues that this new interpretation applies to all people who

enter without inspection and are alleged to be inadmissible under § 1182, as per § 1225(b)(2)(A).

47. ICE's interpretation and practice change have led to the continued detention of noncitizens, including long-time community members and those ordered released upon posting bond by an IJ. Despite IJ disagreements with ICE's statutory and regulatory interpretations, Petitioner and others are held in ICE detention.

48. "The idea that a different detention scheme would apply to noncitizens' already in the country,' as compared to those 'seeking admission into the country,' is consonant with the core logic of our immigration system." *Martinez v. Hyde*, CV 25-11613-BEM, 2025 WL 2084238 (D. Mass. July 24, 2025) (citing *Jennings v. Rodriguez*, 583 US 281, 289 (2018)); *see also Lopez Benitez v. Francis,* No. 25 CIV. 5937 (DEH), 2025 WL 2267803 (S.D.N.Y. August 8, 2025) ("the Court need not reach the outer limits of the scope of the phrase 'seeking admission' in § 1225(b)—it is sufficient here to conclude that it does not reach someone who has been residing in this country for more than two years, and that as someone 'already in the country,' *Jennings*, 583 US at 289, [Petitioner] may be subject to detention *only* as a matter of discretion under § 1226(a)") (emphasis added).

49. The government's of the INA contradicts the plain text of 8 U.S.C. § 1226. Despite being arrested and detained under § 1226, the government claims Petitioner is detained under § 1225. DHS's filing clearly identified him for detention under § 1226 (8 U.S.C. § 1226). § 1225 has only applied to new arrivals, while § 1226 applies to noncitizens already in the country. Petitioner has been in the US for over 12 years.

15

50. The government's recent interpretation of the INA, which has been consistently used against it for decades, contradicts the plain language of the statute and its regulations. This position has been consistently rejected by courts. For example, see Martinez, 2025 WL 2084238; Gomes v. Hyde, No. 1:25-cv-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); and Rodriguez v. Bostock, No. 3:25-cv-05240-TMC, 2025 WL 1193850 (W.D. Wash. April 24, 2025). Additionally, Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (March 6, 1997) explains that despite being applicants for admission, aliens present without admission or parole (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination.

51. This new interpretation is inconsistent with the plain language of the INA. First, the government disregards a key phrase in § 1225. "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a[.]"U.S.C. § 1225(b)(2)(A) (emphasis added). In other words, mandatory applies when "the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez*, 2025 WL 2084238, at *2.

52. The "seeking admission" language, "necessarily implies some sort of present tense action." *Martinez*, 2025 WL 2084238, at *6; *see also Matter of M-D-C-V-*, 28 I. & N. Dec. 18, 23 (B.I.A. 2020) ("The use of the present progressive tense 'arriving,' rather than the past tense 'arrived,' implies some temporal or

geographic limit    "); *US v. Wilson*, 503 US 329, 333 (1992) ("Congress' use of verb tense is significant in construing statutes.").

53. In essence, the plain language of Section 1225 applies to immigrants currently seeking admission into the United States at the nation's border or another point of entry. It does not apply to noncitizens "already present in the United States"—only Section 1226 applies in those cases. See *Jennings*, 583 US at 303.

54. The government's position requires the Court to ignore critical provisions of the INA. When interpreting a statute, "every clause and word must have meaning." *United States ex rel. Polansky, M.D. v. Exec. Health Res., Inc.*, 599 US 419, 432 (2023) The words must be read in context and with regard to the overall statutory scheme. *Gundy v. United States*, 588 US 128, 141 (2019) (quotation omitted). The government's position requires the Court to ignore critical provisions of the INA.

55. The government's would make newly enacted parts of the INA redundant. Congress passed the Laken Riley Act in January 2025, Pub.L. No. 119-1, 139 Stat. 3, which amended several INA provisions, including §§ 1225 and 1226. The Act added a new category of noncitizens subject to mandatory detention under § 1226(c)—those already in the US who have been arrested, charged, or convicted of certain crimes. However, under the government's position, these individuals are already subject to mandatory detention under § 1225, making the amendment redundant. Moreover, mandatory-detention exceptions under § 1226(c) are meaningful only if discretionary detention is defaulted to, which is the case under § 1226(a). See

Rodriguez, 2025 WL 1193850, at *12.

58. Additionally, when Congress adopts a new law in the context of a longstanding administrative interpretation, the court generally assumes that the new provision harmonizes with the preceding interpretation. *Monsalvo v. Bondi*, 604 U.S. ___, 145 S. Ct. 1232, 1242 (2025). Congress enacted the Act in the backdrop of decades of agency practice applying § 1226(a) to immigrants such as the petitioner, who are present in the United States but have not been admitted or paroled. *Rodriguez*, 2025 WL 1193850, at *15; *Martinez*, 2025 WL 2084238, at *4; 62 Fed. Reg. 10312, 10323 (March 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled will be eligible for bond and bond redetermination.").

59. Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen is to be removed from the United States." Removal hearings for noncitizen under 1226(a) are held under § 1229a, which "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

60. By contrast, § 1225(b) applies to people arriving at US ports of entry or who recently entered the United States.

61. Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to Petitioner.

**Staying Immigration Judge's Bond Order**

62. Bond decisions issued by an IJ can be appealed by DHS or the noncitizen to the Board of Immigration Appeals ("BIA") by filing a Notice of Appeal from a Decision of an Immigration Judge (EOIR-26) within 30 days.

63. DHS can file a motion with the BIA seeking a discretionary stay of the

18

custody decision—whether to release the noncitizen on bond consistent with the IJ's order at any time during the appeal period. 8 CFR § 1003.19(i)(1) (hereinafter "discretionary stay").

64. In cases where the bond issued is greater than $10,000 or "DHS has determined" that the noncitizen should not be released, a stay of custody order is issued automatically preventing the release of the noncitizen on bond upon filing of a simple one-page form, the Notice of Service of Intent to Appeal Custody Redetermination (EOIR-43). *See* 8 CFR § 1003.19(i)(2) (hereinafter "automatic stay").

65. The discretionary stay requires an individualized analysis by the BIA of the noncitizens case to determine whether to retain the IJ's order. This analysis    the    individual's    criminal    history,    community    ties,

flight risk, potential danger, and the likelihood of success in removal proceedings. For instance, see *Gunaydin v. Trump*, F.Supp.3d –, No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154 (D. Minn. May 21, 2025); *Zavala v. Ridge*, 310 F.Supp.2d 1071 (D. N.D. Cal. 2004); and *Bezman v. Ashcroft*, 245 F.Supp.2d 446 (D. Conn. 2003).

66. In contrast, the automatic stay is a unilateral decision made by ICE through a boilerplate form (EOIR-43). This form does not provide any evidence or analysis of the noncitizen's status as either a flight risk or a danger to the community. Consequently, the automatic stay allows ICE, the party that lost the case before the IJ, to unilaterally and without any specific grounds, to immediately prevent the execution of the IJ's Order of Release. This order is based on a personalized determination that the noncitizen can safely be released from custody upon posting of bond.

67. DHS (the Defendant) can invoke an automatic stay under 8 CFR § 1003.19(i)(2) if they file a notice of appeal with the board within ten days. The notice must be certified by a senior legal official who approves it based on review procedures and is satisfied that the contentions justifying the alien's continued detention have evidentiary support and are warranted by a non-frivolous argument for extending, modifying, or reversing existing precedent or establishing new precedent.

68. The Defendant's notice of appeal lacks new precedent. It only mentios *Jennings v. Rodriguez*, 583 US 281, 287(2018) and *Matter of M-S-*, 27 I&N Dec. 509. Hence, there's no certifiable reason to issue an emergency stay of the immigration judge's bond decision.

69. Form EOIR 43 was only previously used in cases where DHS had concerns that the IJ had issued a bond decision that was egregious and outside the previous precedents. It was an extraordinary measure to ensure there were no "rogue" judges. A failsafe to protect the community against a potentially dangerous individual being released by an incompetent judge.

70. It was not intended to be used a means for DHS to insist that they are correct without judicial review. There is no acceptable reason why DHS cannot ask the BIA to issue discretionary stays on a case-by-case basis.

71. It is important to note there is no congressional authority for ICE, DHS, or any agency within DHS, to unilaterally and automatically stay an IJ's bond decision. In fact, the only congressional authority cuts the other way: Congress determined that the default for noncitizens detained under Section 1226(a) is discretionary release. *Jennings*, 583 US at 289.

72. The automatic stay is not subject to review by either the IJ or the BIA.

73. "'In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.' . . . **Detention after a bail hearing rendered meaningless by an automatic stay likewise should not be the norm.**" *Ashley v. Ridge*, 288 F. Supp. 2d 662, 675 (D.N.J. 2003) (quoting *United States v. Salerno*, 481 US 739, 755 (1987)) (emphasis added).

74. Petitioner is detained today solely at the unilateral behest of ICE, pursuant to a regulation written by executive agencies, not Congress: 8 CFR § 1003.19(i)(2). This regulation states, in whole:

> Automatic stay in certain cases. In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, **any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's**

**filing of a notice of intent to appeal the custody
redetermination (Form EOIR-43)** with the immigration court
within one business day of the order, and, except as otherwise provided
in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the
appeal by the Board. The decision whether or not to file Form EOIR-43
is subject to the discretion of the Secretary.

C.F.R. § 1003.19(i)(2) (emphasis added).

75. The regulations expand on the related procedures in 8 CFR § 1003.6(c).
"If the Board has not acted on the custody appeal, the automatic stay shall
lapse 90 days after the filing of the notice of appeal." 8 C.F.R. § 100.36(c)(4).

76. However, the regulations provide for DHS's continued power to keep a
noncitizen detained even after the automatic stay lapses.

77. "DHS may seek a discretionary stay pursuant to 8 CFR § 1003.19(i)(1)
to stay the immigration judge's order in the event the Board does not issue a
decision on the custody appeal within the period of the automatic stay." 8 CFR
§ 1003.6(c)(5). All DHS must do is submit a motion, and "may incorporate by
reference the arguments presented in its brief in support of the need for
continued detention of the alien during the pendency of the removal
proceedings." *Id.*

78. If the BIA has not resolved the custody appeal within 90 days and "[i]f
the Board fails o adjudicate a previously-filed stay motion by the end of the

22

90-day period, the stay will remain in effect (but not more than 30 days) during the time it takes for the Board to decide whether or not to grant a discretionary stay." 8 C.F.R. § 1003.6(c)(5).

79. If the BIA rules in a noncitizen's favor, authorizing release on bond, or denying DHS's motion for a discretionary stay, "the alien's release shall be automatically stayed for five business days." 8 C.F.R. § 1003.6(d).

80. This additional five-day automatic stay in the event of the BIA authorizing a noncitizen's release is to provide DHS with another opportunity to keep the person detained despite orders to the contrary.

81. "If, within that five-day [secondary automatic stay] period, the Secretary of Homeland Security or other designated official refers the custody case to the Attorney General pursuant to 8 CFR § 1003.1(h)(1), the alien's release shall continue to be stayed pending the Attorney General's consideration of the case. The automatic stay will expire 15 business days after the case is referred to the Attorney General." 8 C.F.R. § 1003.6(d).

82. "DHS may submit a motion and proposed order for a discretionary stay in connection with referring the case to the Attorney General . . . The Attorney General may order a discretionary stay pending the disposition of any custody case by the Attorney General or by the Board." 8 C.F.R. § 1003.6(d).

83. Even if the BIA upheld the IJ's order, grants bond, and orders them released, they would remain in detention for five more days while DHS is given the opportunity to refer the case to the Attorney General pursuant to 8 CFR §

1003.1(h)(1). 8 C.F.R. § 1003.6(d). The same additional automatic five-day stay applies if the BIA denies DHS's motion for discretionary stay or fails to act on such a motion before the automatic stay period expires. *Id.* If the case is referred to the Attorney General, that second automatic stay expires 15 business days after referral. *Id.* DHS may thereafter file another motion for discretionary stay. *Id.* Importantly, if a case is referred to the Attorney General, "[t]he Attorney General may order a discretionary stay pending the disposition of any custody case by the Attorney General or by the Board." *Id.* There is no time limit for this stay or these decisions.

84. The scheme, plainly designed by the executive branch to give DHS the power to circumvent both IJ and BIA orders, can be summarized as follows:

- IJ orders DHS to release noncitizen on bond:
  - DHS files EOIR-43 Notice of Intent to Appeal within one business day, invoking automatic stay. 8 C.F.R. § 1003.19(i)(2).
  - DHS files EOIR-26 Notice of Appeal within ten business days. 8 C.F.R. § 1003.6(c)(1).
  - Automatic stay lapses 90 days after DHS files EOIR-26 Notice of Appeal. 8 C.F.R. § 1003.6(c)(4).
  - DHS may seek discretionary stay before 90 days lapse. 8 C.F.R. §§ 1003.6(c)(5); 1003.19(i)(1).
- BIA orders release on bond or denies discretionary stay motion:
  - Release is automatically stayed for an additional five business days. 8 C.F.R. § 1003.6(d).
  - Within that five business day automatic stay, DHS may refer the case to the Attorney General. 8 C.F.R. § 1003.6(d).
  - Automatic stay is extended for 15 business days after DHS refers the case to the Attorney General. 8 C.F.R. § 1003.6(d).
  - DHS may seek a discretionary stay with the Attorney General for the duration of the case. 8 CFR § 1003.6(d).

85. The regulations are written in such a way that it does not matter what

24

either the IJ or BIA orders; if the government disagrees, the government can, through its own actions and per its own regulations, keep the noncitizen detained, indefinitely.

86. "Indefinite detention of a [noncitizen]" raises "a serious constitutional problem." *Zadvydas*, 533 US at 690. The automatic stay provision detains individuals indefinitely, without a "discernible termination point" (*Ashley*, 288 F.Supp.2d at 672), "definite termination point" (*Zabadi v. Chertoff*, No. C05-01796 WHA, 2005 WL 1514122, at *1 (N.D. Cal. 2005)), "finite time frame" (*Id.*), "certain time parameters for final resolution" (*Zavala*, 310 F. Supp.2d at 1075), or "ascertainable end point" (*Bezmen*, 245 F.Supp.2d at 449-50).

87. The automatic stay lacks review by the IJ or BIA, violating due process. Noncitizens arrested and detained despite an IJ order can't challenge the stay before immigration court or BIA. *See Ashley*, 288 F.Supp.2d at 675 ("continued detention of alien without judicial review of the automatic stay of bail determination violated alien's procedural and substantive due process rights").

88. Petitioner's continued detention under the automatic stay will never be reviewed. His only option is to wait for the BIA to take up the underlying matter.

**Board of Immigration Appeals**

89. The BIA's appellate process doesn't offer a meaningful or timely chance to correct Respondent's errors.

90. According to the agency's own data, during fiscal year 2024, the BIA's average processing time for a bond appeal was 204 days, approximately seven months. For an average case where bond was granted in July 2025, it is likely

25

that it would not be decided until February 2026. *See Vazquez v. Bostock*, 3:25-CV-05240-TMC (D. W.D. Wash. May 2, 2025).

91. The 204 days is only for the average case. Cases can take longer or shorter, meaning that there is no definite timeline for resolution and release.

92. The duration of an individual's incarceration awaiting appellate review significantly diminishes their opportunities to engage with their family, spouse, and community members, as well as their right to liberty. These individuals, who are frequently US citizens or lawful permanent residents, are also deprived of the emotional support, financial assistance, and meaningful contributions that the detained person provides to their families and communities.

93. Detained individual noncitizens are often incarcerated in jail, or jail-like, settings. They are forced to sleep in communal spaces, receive inadequate medical care, and subjected to other degrading treatment.

94. While not all noncitizens succeed in their appeals, some do. The BIA's months-long appellate review means that for those individuals, they have spent months of unnecessary time in detention and suffered the harms outlined above.

95. Failing to provide timely appellate review of erroneous interpretations of the INA violates the Due Process Clause.

**The Automatic Stay Violates Due Process**

96. The automatic stay "operates by fiat and has the effect of prolonging detention even after a judicial officer has determined that release on bond is appropriate. That mechanism's operation here—in the absence of any

26

individualized justification—renders the continued detention arbitrary as applied." *Mohammed H. v. Trump*, – F. Supp. 3d – , No. CV 25-1576 (JWB/DTS), 2025 WL 1334847 at *6 (D. Minn. May 5, 2025).

97. In determining whether due process has been violated, the Court should weigh: (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of the private interest, and the extent to which that risk could be reduced by additional safeguards; and (3) the government's interest in maintaining the current procedures, including the governmental function involved and the fiscal and administrative burdens that the substitute procedural requirement would entail. *Mathews*, 424 US 319 at 335.

98. As to the first *Mathews* factor, the private interest affected by the government action, "Petitioner's liberty interest in remaining free from governmental restraint is of the highest constitutional import." *Zavala*, 310 F.Supp.2d at 1076; *see also Ashley*, 288 F.Supp.2d at 670-71 (same) (quoting *St. John v. McElroy*, 917 F.Supp. 243, 250 (S.D.N.Y. 1996)). Petitioner has been detained for over two months, preventing her from seeing children who are struggling without her, going to work, and participating in her community.

99. As to the second *Mathews* factor, this Court must consider the risk of erroneous deprivation of the private interest due to current procedures and assess how additional safeguards can reduce this risk. Unlike typical stay requests that require merit-based proof, the automatic stay provision eliminates this need, as it was enacted to avoid individualized determinations. An IJ has already determined that Petitioner is neither a flight risk nor a

27

danger to the community.

100.    But that individualized reasoned decision by the IJ was effectively overruled by a unilateral determination by an ICE attorney which "poses a serious risk of error." *Zavala*, 310 F.Supp.2d at 1076. This allows the DHS attorney, "who has by definition failed to persuade a judge in an adversary hearing that detention is justified," to make the stay decision without oversight or review. *Ashley*, 288 F.Supp.2d at 671. This conflates the role of prosecutor and adjudicator, which is impermissible due to the high potential for error. *See Marcello v. Bonds*, 349 US 302, 305-06 (1955).

101.    As to the third *Mathews* factor, the government's interest in maintaining the "current" procedure is minimal here. This "policy and procedure" was never officially published by DHS and was only discovered by the press observing an intraoffice memo mere weeks ago on July 8, 2025. *See* Ex. 5. As explained above, the IJ has already reached a decision that Petitioner is appropriate to be released on bond, having considered both dangerousness and flight risk. *See* Ex. 1. Further, DHS is still able to seek a discretionary stay before the BIA under 8 CFR § 1003.19(i)(1) which would require some showing of likelihood of success on the merits. *Ashley*, 288 F.Supp.2d at 670-71; *Zavala*, 310 F.Supp.2d at 1079.

102.    To prevail on a claim of due process deprivation, a petitioner must also show "actual prejudice." *Puc-Ruiz v. Holder*, 629 F.3d 771, 782 (8th Cir. 2010) (citation omitted). Actual prejudice occurs if "an alternate result may well have resulted without the violation." *Id.* (citation omitted) (internal quotations omitted). "To show prejudice, [a Petitioner] must present plausible

28

scenarios in which the outcome of the proceedings would have been different if a more elaborate process were provided." *Tamayo-Tamayo v. Holder*, 486 F.3d 484, 495 (9th Cir. 2007) (citation omitted) (internal quotations omitted).

103.    Certainly, if DHS couldn't invoke the automatic stay, Petitioner would've been released on bond, home with his family, and able to support his household. This would've happened as per the IJ's order to release him upon posting a $10,000 bond, which is ready. His continued detention due to ICE's unilateral action based on "interim guidance" despite the IJ's order is actual prejudice.

104.    Furthermore, it is entirely plausible that the more elaborate process of the discretionary stay (8 CFR § 1003.19(i)(1)) would have resulted in the BIA not granting a stay of the bond order. This is because DHS is unable to show a likelihood of success on the merits and Petitioner would be permitted to reply in opposition to the stay arguing the same grounds as the IJ's reasoning for granting release upon bond.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Violation of the Due Process Clause of the Fifth Amendment
### of the United States Constitution

105.   Petitioner repeats and incorporates by reference all allegations above as though set forth fully herein.

106.   The Due Process Clause inquires whether the government's deprivation of an individual's life, liberty, or property is justified by a compelling purpose. In this case, it is unequivocally evident that the government has forcibly taken away Petitioner's liberty.

107.   The government's detention of Petitioner is unjustified. Respondents have not demonstrated that Petitioner needs to be detained. *See Zadvydas*, 533 US at 690 (finding immigration detention must further the twin goals of (1) ensuring the noncitizen's appearance during removal proceedings and (2) preventing danger to the community). There is no credible argument that Petitioner cannot be safely released back to his community and family.

108.   The automatic stay provision keeping Petitioner detained today is unconstitutional as applied to her and in violation of his due process rights. An IJ ordered ICE to release Petitioner on a reasonable bond of $9,000.00, and because ICE disagrees with that order based upon a new and novel "interim guidance," it invoked an automatic stay of the order, rendering Petitioner stuck in detention.

109.   The automatic stay regulation rendered Petitioner's bond hearing a charade, because the outcome of the hearing or the validity of the IJ's reasoning

did not matter. ICE wants Petitioner detained, and through the automatic stay, it can effectively ignore the IJ's order to the contrary. There is no due process when the government, who lost the argument in court, gets to do what they want anyway.

110.    For these reasons, Petitioner's detention violates the Due Process Clause of the Fifth Amendment.

## SECOND CAUSE OF ACTION
### Violation of Immigration and Nationality Act

111.    Petitioner repeats and incorporates by reference all allegations in paragraphs 1-99 as though set forth fully herein.

112.    Petitioner was detained pursuant to "authority contained in section 236" of the INA; section 236 is codified at 8 U.S.C. § 1226. Despite this, DHS now argues that he is detained subject to 8 U.S.C. § 1225(b)(2).

113.    The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. Mandatory detention is not applicable to individuals who have previously entered the United States and have been residing here prior to their apprehension and subsequent removal proceedings initiated by Respondents. Such noncitizens are detained under § 1226(a) and are eligible for release on bond, unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

114.    Respondents have a new policy of arguing all noncitizens, such as Petitioner, are subject to mandatory detention under § 1225(b)(2).

115.    The unlawful application of § 1225(b)(2) to Petitioner violates the

INA.

## THIRD CAUSE OF ACTION
### *Ultra Vires* Regulation

116.    Petitioner repeats and incorporates by reference all allegations in paragraphs 1-99 as though set forth fully herein.

117.    The automatic stay regulation exceeds the authority given to the Attorney General by Congress and unlawfully eliminates IJs' discretionary authority to make custody determinations.

118.    The United States Congress has granted the Attorney General the authority to determine whether to release detained non-citizens pending removal proceedings, provided that they have not been convicted of specific criminal offenses and are not associated with terrorist activities.. *See* 8 U.S.C. § 1226(a), (c). The Attorney General has delegated this authority to IJs, who have discretion to determine whether to release these noncitizens on bond. 8 CFR §§ 1003.19, 1236.1; *see also* 28 U.S.C. § 510 (permitting the Attorney General to delegate her function to officers or employees within the Department of Justice).

119.    Congress has not delegated this authority to DHS. There is no statutory authority for DHS to unilaterally stay an IJ's bond determination. DHS's use of the automatic stay is an unlawful use of the discretionary power granted to the Attorney General and "has the effect of mandatory detention of a new class of aliens, although Congress has specified that such individuals are not subject to mandatory detention." *Zavala*, 310 F. Supp. 2d at 1079; *see also Ashley*, 288 F. Supp. 2d at 673 ("As Congress exempted aliens like

32

Petitioner from the mandatory detention of § 1226(c), it is unlikely that it would have condoned this back-end approach to detaining aliens like Petitioner through the combined use of § 1226(a) and § 3.19(i)(2).").

120.    Here, the IJ determined that upon posting of set bond Petitioner is not a danger to the community or a flight risk and ordered DHS release upon posting of bond.

121.    The automatic stay regulation, 8 CFR § 1003.19(i)(2), purports to give DHS the authority to unilaterally override the IJ's decision. It is unlawful and *ultra vires*.

## **PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

1)    Assume jurisdiction over this matter;

2)    Order the immediate release of Petitioner pending these proceedings;

3)    Order Respondents not to transfer Petitioner out of the District of Nebraska during the pendency of these proceedings to preserve jurisdiction and access to counsel;

4)    Declare that Respondents' actions to detain Petitioner violate the Due Process Clause of the Fifth Amendment, violates the Immigration and Nationality Act and is *ultra vires*;

5)    Issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and order Respondents to immediately release Petitioner from custody in accordance with the bond order from the IJ, or, in the alternative, order Respondents to show cause why this Petition should not be granted within three days;

6)    Award reasonable attorneys' fees and costs for this action; and

7)    Grant such further relief as the Court deems just and proper.

Dated: August 28, 2025
Respectfully submitted,

Luciano Vargas Lopez,
Petitioner.


By: */s/ Jamie L. Arango*
Jamie L. Arango, NE
#25606
4546 S 86th St, Ste A
Lincoln, NE 68526
Telephone: (402)853-6360
arangolawllc@outlook.com
Attorney for Petitioner

## VERIFICATION

I, Jamie Arango, being duly sworn upon oath,
hereby state: I represent the Petitioner in these habeas
corpus proceedings. The Luciano Vargas Lopez, is
currently being held in detention at the Lincoln County
Correctional facility, and he is not able to appear in my
office to sign the Verification. I have reviewed the
record of the removal proceedings, discussed this matter
with the Petitioner's family, and discussed the
Petitioner's detention status with an officer of the
Department of Homeland Security. I verify that the
information contained in the foregoing Petition is true
and correct to the best of my knowledge and belief.


/s/ Jamie L Arango
Jamie L. Arango
Counsel for Petitioner

CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2025, I served the foregoing Petition for Writ of Habeas Corpus and accompanying exhibits by USPS priority mail certified to the following:

Pam Bondi
US Attorney General
950 Pennsylvania Ave
N.W. Washington, D.C. 20530

Office of the United States Attorney
District of Nebraska
1620 Dodge St, Ste 1400
Omaha, NE 68102

Kristi Noem
Secretary of Homeland Security
2707 Martin Luther King Jr Ave SE
Washington, D.C. 20032

Allen Gill
Field Office Director Omaha Field Office
1717 Ave H, Ste 174
Omaha, Ne 68110

Todd Lyons
Immigration and Customs Enforcement Director
500 NW 12th St SW
Washington, D.C. 20536

Peter Burg, Field Office Director
Minnesota Field Office
1 Federal Dr, Ste 1340
Fort Snelling, MN 55111

Jerome Kramer
Lincoln County Sheriff
302 North Jeffers St

North Platte, Ne 69101

Donald Trump
President of the United States of America
1600 Pennsylvania Ave NW
Washington, D.C. 20500