IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LUCIANO VARGAS LOPEZ,<br><br>                    Petitioner,<br><br>vs.<br><br>DONALD J. TRUMP, in their official capacity as President of the United States; KRISTI NOEM, in their official capacity as Secretary of the United States Department of Homeland Security; PAMELA BONDI, in their official capacity as Attorney General of the United States; TODD M. LYONS, in their official capacity as Acting Director of the United States Immigration and Customs Enforcement; PETER BERG, in their official capacity as St. Paul Field Office Director for Enforcement and Removal Operations, United States Immigration and Customs Enforcement; JEROME KRAMER, in their official capacity as Dakota County Sheriff, Official of Dakota County Detention Center; and ALLEN GILL, in their official capacity as Field Office Director of Omaha office of United States Immigration and Customs Enforcement,<br><br>                    Respondents. | 8:25CV526<br><br>MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

      In this action for habeas corpus relief pursuant to 28 U.S.C. § 2241, Petitioner Luciano Vargas Lopez, an undocumented alien resident of the United States, "seeks immediate release . . . from unlawful detention in violation of his constitutional and statutory rights." Filing 1 at 2 (¶ 1). The Court held a hearing on Vargas Lopez's Petition for Writ of Habeas Corpus on Friday, September 26, 2025. The Court now enters this Memorandum and Order on his Petition.

**I.   INTRODUCTION**

      The Court's consideration of this Petition has been hampered by the mistakes made in it. Given inconsistencies, it appears that the Petition was drafted in large part from the pleadings of

1

similar petitioners without fully tailoring it to Vargas Lopez or his circumstances.[1] It also contains errors about how long Vargas Lopez has been in the United States; where he was living; where, when, and how he was detained by immigration officials; and where he is now detained.[2] Most determinatively, exhibits regarding Vargas Lopez's detention that the Petition states were to be attached as exhibits to the Petition were not attached and were never provided to the Court.[3]

The Court concludes that the mistakes in the Petition, including the failure of Vargas Lopez to attach certain referenced exhibits, prevent Vargas Lopez from meeting his burden to show he is entitled to habeas relief. The Court concludes further that the Department of Homeland Security (DHS) argued at Vargas Lopez's detention hearing in front of the Immigration Judge (IJ) that it wished to detain Vargas Lopez pursuant to 8 U.S.C. § 1225(b). Filing 1-3 at 1. Aliens detained pursuant to § 1225(b) are not eligible for release on bond. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings"). The IJ's reasoning to release Vargas Lopez pursuant to 8 U.S.C. § 1226(a), which

---

[1] *See* Filing 1 at 5 (¶ 15) (referring to one child), 9 (¶ 33) (referring to "his young children"), 27 (¶ 98) ("Petitioner has been detained for over two months, preventing her [sic] from seeing children who are struggling without her [sic], going to work, and participating in her [sic] community."), 30 ("The automatic stay provision keeping Petitioner detained today is unconstitutional as applied to her [sic] and in violation of his due process rights.").

[2] *Compare* Filing 1 at 2 (¶ 3) (alleging that he has been in the United States for over 20 years), *with* Filing 1 at 5 (¶ 15) (alleging that he was born in Guatemala and "came to the United States in 2013"); *compare* Filing 1 at 2 (¶ 3) (alleging that he was living in Hawarden, Iowa), *with* Filing 1 at 5 (¶ 15) (alleging that prior to his detention he was living in Omaha, Nebraska); *compare* Filing 1 at 2 (¶ 2) (alleging that he was detained following a traffic stop in Sioux City, Iowa, on June 24, 2025), *with* Filing 1 at 7 (¶ 24) (alleging that he "was detained during an enforcement action at Glenn Valley Foods in Omaha, Nebraska on June 10, 2025."); *compare* Filing 1 at 3 (¶ 8) (alleging that he "is detained in civil immigration custody at Dakota County Detention Center in Dakota City, Nebraska"), *with* Filing 25 at 4 ("Petitioner remains detained in a detention center in North Platte, NE." (citing Declaration of Raad, Filing. 27 at 4 (¶ 23)); *compare* Filing 1 at 7 (¶ 23) ("Respondent Jerome Kramer is named in their [sic] official capacity as the Sheriff of Dakota County and the Official of the Dakota County Detention Center," Filing 1 at 7 (¶ 23), *with* Filing 28 at 1 (Jerome Kramer is the Sheriff of Lincoln County, Nebraska).

[3] *Compare* Filing 1 at 7 (¶ 25) (identifying Exhibit 2 as "Notice of Custody Determination (June 11, 2025)"), *with* Filing 1-3 at 1 (Exhibit 2, which is instead the July 21, 2025, Bond Memorandum of the Immigration Judge). Vargas Lopez failed to attach to his Petition Exhibit 5, identified as Interim Guidance Regarding Detention Authority for Application for Admission (July 8, 2025), Filing 1 at 8 (¶ 28), or Exhibit 8, identified as Declaration of Kerry Doyle (August 12, 2025), Filing 1 at 14 (¶ 45). There are no exhibits 6 or 7, either.

allows for release on bond, despite DHS's argument that Vargas Lopez was being detained pursuant to § 1225(b), has now been reversed by the Board of Immigration Appeals (BIA). *See Matter of Yahure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Indeed, if Vargas Lopez's bond hearing occurred today, this Court believes there can be no real dispute that the IJ would be bound by BIA case law to deny Vargas Lopez's request for release on bond once the DHS asserted that it was detaining him under § 1225(b)(2).

Upon reviewing § 1225 and applicable binding case law, this Court concludes that the DHS properly detained Vargas Lopez under § 1225(b) and that he is not eligible for bond. For this reason, as well as Vargas Lopez's failure to present essential evidence, Vargas Lopez's Petition for Habeas Corpus is denied.

### A.  Factual Background

Vargas Lopez, who is now 34 years old, was born in Guatemala and "came to the United States in 2013." Filing 1 at 5 (¶ 15); Filing 29 at 2 (also stating that he "came to the US in 2013, from Guatemala"). Vargas Lopez does not allege precisely when or where he entered the United States. The Federal Respondents point to a declaration of a deportation officer that Vargas Lopez was not admitted to or paroled into the United States after inspection by an immigration officer. Filing 25 at 2 (citing Filing 27 at 3 (¶ 15)). The deportation officer also declares that Vargas Lopez has no prior immigration history. Filing 27 at 3 (¶ 13). Vargas Lopez alleges that before his detention, he was living with his family in Omaha, Nebraska. Filing 1 at 5 (¶ 15).

Vargas Lopez alleges that he "was detained during an enforcement action at Glenn Valley Foods in Omaha, Nebraska on June 10, 2025." Filing 1 at 7 (¶ 24). This allegation at least suggests that Vargas Lopez was working at Glenn Valley Foods, but there are no allegations about or other evidence showing how he was able to obtain employment without proper documentation. Vargas Lopez alleges that he "was initially detained without bond by DHS '[p]ursuant to the authority

3

contained in section 236' of the INA [8 U.S.C. § 1226]." Filing 1 at 7 (¶ 25). This statement purports to quote a "Notice of Custody Determination (June 11, 2025)," cited as Exhibit 2 to Vargas Lopez's Petition. However, that Notice is not the document attached to the Petition as Exhibit 2, and that Notice does not appear to be elsewhere in the record.

On June 11, 2025, the DHS issued Vargas Lopez a Notice to Appear, informing him that he is "an alien present in the United States who has not been admitted or paroled." Filing 27-1 at 1. More specifically, DHS alleged as to Vargas Lopez,

> 1. You are not a citizen or national of the United States;
> 2. You are a native of GUATEMALA and a citizen of GUATEMALA;
> 3. You entered the United States at or near UNKNOWN, on or about unknown date;
> 4. You were not then admitted or paroled after inspection by an Immigration Officer.

Filing 27-1 at 1. Consequently, DHS charged Vargas Lopez as an alien "subject to removal" under the following provision:

> 212(a) (6) (A) (i) of the Immigration and Nationality Act, [8 U.S.C. § 1182(a)(6)(A)(i),] as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

Filing 27-1 at 1. The Notice to Appear required Vargas Lopez to appear before an IJ in Omaha Nebraska on July 10, 2025. Filing 27-1 at 1. The Notice to Appear indicates that Vargas Lopez "declined to sign" the certificate of service. Filing 27-1 at 2. The Notice to Appear does not indicate the statutory provision under which Vargas Lopez was originally detained.

On July 10, 2025, the IJ issued an Order of the Immigration Judge in Custody Redetermination Proceedings. Filing 1-2. The IJ's Order stated,

> The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered: [checked box for] Granted. It is ordered that Respondent be: [checked box for] released from custody under bond of $10,000.

4

Filing 1-2 at 1 The form order shows that DHS reserved its right to appeal, while Vargas Lopez waived his right to appeal. Filing 1-2 at 2. On July 21, 2025, the IJ filed a Bond Memorandum of the Immigration Judge setting out her full rationale for releasing Vargas Lopez on bond, including citations to certain DHS documents. Filing 1-3 at 1-2. The documents she cited are not in the record in this action.

After losing its argument that Petitioner should have been detained under § 1225(b) without the possibility of a bond hearing, on July 10, 2025, the same date as the IJ's original Order, Immigration and Customs Enforcement (ICE) counsel filed a Notice of ICE Intent to Appeal Custody Redetermination given that was the only way ICE could continue to detain Vargas Lopez. Filing 1-4; Filing 27-3. The Notice stated in part, "filing this form on July 10, 2025 automatically stays the Immigration Judge's custody redetermination decision." Filing 1-4 at 1 (¶ 3) (citing 8 C.F.R. § 1003.19(i)(2)). It stated further,

> The stay shall lapse if ICE does not file a notice of appeal along with appropriate certification within ten business days of the issuance of the order of the Immigration Judge, or upon ICE's withdrawal of this notice, or as set forth in 8 C.F.R. §1003.6(c)(4) and (5).

Filing 1-4 at 1 (¶ 4) (citing 8 C.F.R. § 1003.6(c)(1)). Attached to the Notice was an "EOIR-43 Senior Legal Official Certification," signed by the Chief Counsel for the Office of the Principal Legal Advisor, Minneapolis U.S. Immigration and Customs Enforcement, and certifying that he had approved the filing of the Notice and that he was satisfied that the record and law supported the administrative appeal. Filing 1-4 at 2.

The deadlines have expired for briefing on the administrative appeal to the BIA of Vargas Lopez's release on bond, Filing 27-4 at 1, but no decision has so far been handed down. On August 28, 2025, the Executive Office for Immigration Review, Omaha Immigration Court, issued a

Notice of In-Person Hearing to Vargas Lopez setting his individual hearing before the immigration court in his removal proceedings for October 22, 2025. Filing 27-5 at 1.

In this habeas proceeding, the United States has once again argued what it argued in front of the IJ at Vargas Lopez's detention hearing—that Vargas Lopez should have been detained without the possibility of a bond hearing under § 1225(b).

Vargas Lopez alleges that he has remained in civil immigration detention since June 10, 2025. Filing 1 at 5 (¶ 15).

### B.  Procedural Background

Vargas Lopez filed his Petition for Habeas Corpus in this Court on August 29, 2025. Filing 1. In his Petition, he asserts three causes of action. The First Cause of Action is captioned "Violation of the Due Process Clause of the Fifth Amendment of the United States Constitution." Filing 1 at 30. It alleges that the automatic stay of his release on bond pursuant to 8 C.F.R. § 1003.19(i)(2) violates his due process rights. Filing 1 at 30–31 (¶¶ 108–110). Vargas Lopez's Second Cause of Action is captioned "Violation of Immigration and Nationality Act." Filing 1 at 31. It alleges that the DHS's application in his case of 8 U.S.C. § 1225(b)(2), which does not provide for bond, is unlawful because he was detained under 8 U.S.C. § 1226, which expressly provides the possibility of release on bond. Filing 1 at 31 (¶¶ 112–115). Vargas Lopez's Third Cause of Action is captioned "*Ultra Vires* Regulation." Filing 1 at 32. It again challenges the lawfulness of the automatic-stay provision in 8 C.F.R. § 1003.19(i)(2) but this time on the ground that it is *ultra vires* as an unlawful use of discretionary power. Filing 1 at 32–33 (¶¶ 117–121).

As required by 28 U.S.C. § 2243, which sets out the applicable procedure for habeas actions, the Court set an expedited briefing schedule and a prompt hearing on September 26, 2025.

## II. LEGAL ANALYSIS

### A. The Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241

Article I, § IX of the United States Constitution states, "The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in cases of Rebellion or Invasion the public Safety may require it." "In enacting the present Title 28 of the United States Code [in 1948], Congress largely recodified the federal courts' pre-existing habeas authority in §§ 2241 and 2243, which, respectively, confer the power to grant the writ and direct the issuing court to 'dispose of the matter as law and justice require.'" *Jones v. Hendrix*, 599 U.S. 465, 473 (2023) (citing 62 Stat. 869, 964–65). Section 2241 extends the writ *inter alia* to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on the District Court jurisdiction to hear habeas corpus challenges to the legality of the detention of aliens. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . . Section 2241, by its terms, requires nothing more."), *judgment entered*, No. 04A41, 2004 WL 7372970 (U.S. July 16, 2004); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases." (citing 28 U.S.C. § 2241(c)(3))). The Federal Respondents do not challenge this Court's subject-matter jurisdiction over Vargas Lopez's Petition for Writ of Habeas Corpus, and the Court is satisfied that is has such jurisdiction. District Courts in this circuit and elsewhere agree that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful. *See Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (collecting cases).

7

## B. The Key Statutory Provisions

The issue at the center of this case is the interplay among various statutes in the Immigration and Naturalization Act (INA) to which undocumented aliens present in the United States are subject. The statute under which Vargas Lopez has been charged provides as follows:

**(6) Illegal entrants and immigration violators**

    **(A) Aliens present without admission or parole**

        **(i) In general**

        An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.

8 U.S.C. § 1182(a)(6)(A)(i). Vargas Lopez received a Notice to Appear as required by 8 U.S.C. § 1229(a) to initiate removal proceedings pursuant to 8 U.S.C. § 1229a for allegedly violating 8 U.S.C. § 1182(a)(6)(A)(i). *See* Filing 27-1 (Notice to Appear stating that it was "[i]n removal proceedings under section 240 of the Immigration and Nationality Act," *i.e.*, 8 U.S.C. § 1229a); *see also* 8 U.S.C. § 1229a(a)(2) ("An alien placed in proceedings under this section may be charged with any applicable ground of inadmissibility under section 1182(a) of this title or any applicable ground of deportability under section 1227(a) of this title."). Section 1231 of Title 8 provides for the detention and removal of aliens ordered removed. *See* 8 U.S.C. § 1231.

Pursuant to 8 U.S.C. § 1225, aliens are subject to inspection by immigration officers to determine their admissibility or inadmissibility. In pertinent part, § 1225(a) provides,

**(a) Inspection**

    **(1) Aliens treated as applicants for admission**

    An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

> \*\*\*
>
> **(3) Inspection**
>
> All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers.

8 U.S.C. § 1225(a)(1), (3); *see also Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) ("[A]n alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.' [8 U.S.C.] § 1225(a)(1). Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law. [8 U.S.C.] § 1225(a)(3).").

Section 1225(b)(1) provides for "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." 8 U.S.C. § 1225(b)(1). "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287 (citing 8 U.S.C. § 1225(b)(1)(A)(i), in turn citing §§ 1182(a)(6)(C), (a)(7)). It also applies "to certain other aliens designated by the Attorney General in his discretion." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(iii)). No party has argued that § 1225(b)(1) is relevant here.

According to the Supreme Court, "Section 1225(b)(2) is broader." *Id.* Specifically, "[i]t serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)." *Id.* (citing 8 U.S.C. §§ 1225(b)(2)(A), (B)). In pertinent part, § 1225(b)(2) states the following:

> **(2) Inspection of other aliens**
>
> **(A) In general**
>
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond

9

> a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). Section 1225(b) does not include a warrant or an arrest requirement for the detention of such an alien. It also has no provision for release on bond of an alien detained under it. See *Jennings*, 583 U.S. at 297 (explaining that until removal proceedings end, "nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

On the other hand, 8 U.S.C. § 1226 provides for arrest based on a warrant, detention, and release of aliens. Section 1226(a) provides in pertinent part,

> **(a) Arrest, detention, and release**
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--
>
> > **(1)** may continue to detain the arrested alien; and
> >
> > **(2)** may release the alien on--
> >
> > > **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> > >
> > > **(B)** conditional parole[.]

8 U.S.C. § 1226(a)(1), (2). The exception in subsection (c) is for the detention of defined "criminal aliens," 8 U.S.C. § 1226(c), which is not applicable in this case.

Vargas Lopez asserts that he was detained under § 1226(a), so he was eligible for release on bond. The Federal Respondents argue that he was instead detained under § 1225(b)(2), so he was never eligible for release on bond. If the Court decides this issue in the Federal Respondents' favor, Vargas Lopez's release on bond was void *ab initio*, and the Court will never reach the question of whether the automatic-stay provision in 8 C.F.R. § 1003.19(i)(2) violates due process

10

or is *ultra vires*, even though DHS used that regulation to keep Vargas Lopez in custody after the IJ ordered him released on bond.

### C. The Errors in Vargas Lopez's Petition Prevent Habeas Relief

As mentioned above, Vargas Lopez bears the burden of demonstrating by a preponderance of the evidence that his detention is unlawful. See *Maldonado*, 2025 WL 2374411, at *4 (collecting cases). The Court concludes that Vargas Lopez fails to meet his burden to show that he falls under § 1226(a), so his Petition fails regardless of the parties' arguments about the scope of § 1225(b) and § 1226(a). This is so, because Vargas Lopez's argument that he falls within § 1226(a) is his only argument that he is eligible for release on bond.

This Court concludes that as a matter of plain meaning, § 1226(a) states certain requirements for an alien to fall within its scope. The Supreme Court concluded that as a matter of plain meaning,

> § 1226 applies to aliens already present in the United States. Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings. Section 1226(a) also permits the Attorney General to release those aliens on bond, "[e]xcept as provided in subsection (c) of this section."

*Jennings*, 583 U.S. at 303. Section 1226(a) expressly states, "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States" and "[e]xcept as provided in subsection (c) and pending such decision, the Attorney General . . . may release the alien on . . . bond . . . or conditional parole. . . ." 8 U.S.C. § 1226(a). Thus, one express requirement to fall within § 1226(a)—and the critical one here—is that the alien was arrested on a warrant issued by the Attorney General. *Id.*

No warrant of any kind for Vargas Lopez's arrest has been submitted to the record in this case. Indeed, Vargas Lopez does not allege anywhere in his Petition that he was arrested on a

11

warrant. Rather, he alleges that his "detention was following a targeted arrest and investigation," citing the IJ's Bond Memorandum. Filing 1 at 8 (citing Filing 1-3).

The IJ's Bond Memorandum states that DHS "issued a Warrant for Arrest of Alien (I-200)" citing § 1226. Filing 1-3 at 1. However, the purported warrant for Vargas Lopez's arrest under § 1226 is not in the record. In these circumstances, this Court is unable to defer to or even assess the IJ's findings on the existence of a warrant or its basis for Vargas Lopez's arrest. *See, e.g.*, *Rodrigues v. Garland*, 124 F.4th 58, 64 (1st Cir. 2024) (explaining that when reviewing an IJ's denial of asylum, the courts defer to the IJ's factual determinations if they are supported by substantial evidence).

This failure of proof of a warrant for Vargas Lopez's arrest is fatal to the Second Cause of action. Vargas Lopez has not provided this Court with the documents necessary for Vargas Lopez to be eligible for release on bond under § 1226(a). Therefore, the Court denies Vargas Lopez's Second Cause of Action.

### D. Vargas Lopez Was Properly Detained Under § 1225(b)(2)

As outlined above, the Court concludes Vargas Lopez's petition for habeas corpus fails due to his failure to meet his burden to show that he was detained under § 1226(a) given the mistakes in his Petition. However, in order to expedite any further review of this matter, and in an effort to address Vargas Lopez's claims efficiently, the Court alternatively concludes that Vargas Lopez was subject to detention without the possibility of bond under § 1225(b)(2).

1. *Sections 1225(b)(2) and 1226(a) Overlap*

Vargas Lopez's argument that § 1225(b)(2) does not apply to him but § 1226(a) does is premised on the assumption that the two statutes apply to distinct groups of aliens. The Court rejects that assumption.

12

The Supreme Court stated,

> U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings*, 583 U.S. at 289. This statement does not mean that § 1225(b) and § 1226(a) are mutually exclusive.

The Supreme Court interpreted § 1225(b) more specifically as follows:

> As noted, § 1225(b) applies primarily to aliens seeking entry into the United States ("applicants for admission" in the language of the statute). Section 1225(b) divides these applicants into two categories. First, certain aliens claiming a credible fear of persecution under § 1225(b)(1) "shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Second, aliens falling within the scope of § 1225(b)(2) "shall be detained for a [removal] proceeding." § 1225(b)(2)(A).
>
> Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

*Jennings*, 583 U.S. at 297.

The Supreme Court then addressed § 1226:

> While the language of §§ 1225(b)(1) and (b)(2) is quite clear, § 1226(c) is even clearer. As noted, § 1226 applies to aliens already present in the United States. Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings. Section 1226(a) also permits the Attorney General to release those aliens on bond, "[e]xcept as provided in subsection (c) of this section." Section 1226(c) in turn states that the Attorney General "shall take into custody any alien" who falls into one of the enumerated categories involving criminal offenses and terrorist activities. § 1226(c)(1).

*Jennings*, 583 U.S. at 303. The Supreme Court further explained § 1226's bond provisions as follows

13

> [A]s noted, § 1226(a) authorizes the Attorney General to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States." As long as the detained alien is not covered by § 1226(c), the Attorney General "may release" the alien on "bond ... or conditional parole." § 1226(a). Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention. See 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

*Jennings*, 583 U.S. at 306.

The Federal Respondents argued at the hearing in this Court that the two statues "overlap" as to aliens they cover, like a "Venn diagram." In other words, the Federal Respondents argue that some aliens certainly fall within § 1225(b)(2), even if they may also fall within § 1226(a). Under such circumstances, the Federal Respondents argue that they may either 1) detain such alien without the possibility of release on bond under § 1225(b)(2), or 2) detain the alien under § 1226(a) and provide the permissive possibility of release on bond.

    2. *Vargas Lopez May Be Detained under 1225(b)(2) Even If He is Also Subject to 1226(a)*

In the present case, the United States argued at the detention hearing in front of the IJ that Vargas Lopez should be detained under § 1225(b)(2). The IJ acknowledged this. Filing 1-3 at 1. Despite this, the IJ concluded that Vargas Lopez was subject to § 1226(a) and eligible for release on bond. The IJ's conclusion that Vargas Lopez was detained under § 1226(a) has now had its reasoning overruled by a decision of the BIA that is binding upon the IJ in this case:

> Section 236 [8 U.S.C. § 1226] does not purport to overrule the mandatory detention requirements for arriving aliens and applicants for admission explicitly set forth in section 235(b)(1) and (2) of the INA, 8 U.S.C. § 1225(b)(1), (2). Thus, while an inadmissible alien who establishes that he or she has been present in the United States for over 2 years is not subject to the expedited removal process, the alien nevertheless "shall be detained for a proceeding under section 240." INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A).

*Matter of Hurtado*, 29 I&N Dec. 216, 219–220 (BIA 2025). In *Hurtado*, the BIA held as follows:

> Under the plain reading of the INA, we affirm the Immigration Judge's determination that he did not have authority over the bond request because aliens who are present in the United States without admission are applicants for admission

14

as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings. *See Jennings*, 583 U.S. at 300[.]

*Hurtado*, 29 I&N Dec. at 220.

Although the reasoning in *Hurtado* is binding upon the IJ, and in the judgment of this Court the IJ's detention in this case will certainly be specifically overruled by the BIA when the BIA decides the DHS's appeal of Vargas Lopez's release on bond, the *Hurtado* decision is not binding upon this Court in this habeas action. Thus, the legal question this Court must decide is whether Vargas Lopez is an alien who may be and was detained under § 1225(b)(2). If Vargas Lopez may be and was properly detained under § 1225(b)(2), he was not eligible for a bond hearing in front of the IJ, and he is not entitled to habeas relief in this Court.

The Court concludes that Vargas Lopez is an alien within the "catchall" scope of § 1225(b)(2) subject to detention without possibility of release on bond through a proceeding on removal under § 1229a. 8 U.S.C. § 1225(b)(2); *Jennings*, 583 U.S. at 287 ("[Section 1225(b)(2)] serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)."). At the hearing on Vargas Lopez's Petition, Vargas Lopez's counsel agreed that Vargas Lopez wishes to stay in this country. This makes Vargas Lopez an "applicant for admission," consistent with the conclusion of the BIA in *Hurtado* and *Jennings*. Pursuant to the language of the statute and the holding of *Jennings*, just because Vargas Lopez illegally remained in this country for years does not mean that he is suddenly not an "applicant for admission" under § 1225(b)(2). At Vargas Lopez's detention hearing before the IJ, the DHS sought Vargas Lopez's detention under § 1225(b)(2).[4] Even if

---

[4] At the hearing on the Petition, the Court inquired to the parties whether they knew of any rule or standard that prevented the government from orally requesting at the IJ detention hearing that Vargas Lopez be detained under § 1225(b)(2), even if any documentation giving rise to such hearing (that this Court does not have available to it in this

15

Vargas Lopez might fall within the scope of § 1226(a), he certainly fits within the language of § 1225(b)(2) as well. The Court concludes that the plain language of § 1225(b)(2) and the "all applicants for admission" language of *Jennings* permit the DHS to detain Vargas Lopez under § 1225(b)(2).

This reading of the overlapping relationship between § 1225(b) and § 1226(a) is not only consistent with the plain language of the two provisions but consistent with the interpretation of the two provisions under *Jennings*. First, § 1226 does not contain language limiting its application "to aliens already present in the United States." *Compare Jennings*, 583 U.S. at 289 (stating that United States immigration law "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)."); *id.* at 303 ("As noted, § 1226 applies to aliens already present in the United States."), *with* 8 U.S.C. § 1226(a) (containing no reference to aliens "present" or "already present" in the United States); 8 U.S.C. § 1226(c) (containing no reference to "criminal aliens" "present" or "already present" in the United States). Consequently, the references to "aliens" in § 1226 must be read to mean "alien[s] present in the United States who ha[ve] not been admitted" within the meaning of § 1225(a)(1) and within at least the "catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)" in § 1225(b)(2). *Jennings*, 583 U.S. at 287.[5]

---

proceeding) referenced § 1226(a). Both counsel acknowledged they knew of no legal reason the government could not add a request to detain Vargas Lopez under § 1225(b)(2) at the IJ detention hearing regardless of what statute was referenced in any documents filed in the case at that time. This Court concludes that the government's request for detention under § 1225(b)(2) was properly before the IJ during the detention hearing.

[5] Furthermore, the Supreme Court's decision in *Jennings* does not state that § 1225(b) and § 1226(a) apply to distinct groups of aliens. The Supreme Court did not state that § 1225(b) applies only "to aliens seeking entry into the United States"; rather, the Supreme Court said § 1225(b) "applies primarily to aliens seeking entry into the United States." *Jennings*, 583 U.S. at 297. As a matter of plain language, the additional aliens to whom § 1225(b) applies are "alien[s] present in the United States who ha[ve] not been admitted" according to the definition of "applicants for admission" in § 1225(a)(1). That is arguably the same group of aliens to which the Supreme Court stated § 1226(a) applies. *Jennings*, 583 U.S. at 297 ("§ 1226 applies to aliens already present in the United States").

The DHS sought to detain Vargas Lopez pursuant to § 1225(b)(2). Vargas Lopez is properly detained under § 1225(b)(2). This section does not allow for release on bond. Vargas Lopez's habeas petition is denied.

### E. The Court Does Not Reach the Challenges to the Automatic Stay

Not only does the Court deny Vargas Lopez's Second Cause of Action in his Petition, but the Court denies his other causes of action as moot. That is because the determination that Vargas Lopez was not an alien within the scope of § 1226 means that he was never eligible for release on bond, and Vargas Lopez's release on bond was void *ab initio.*

The Court would have had considerable doubt that the automatic stay in 8 C.F.R. § 1003.19(i)(2) comports with due process. Indeed, no district court has concluded in 2025—that is, since what appears to have been a policy change within the DHS over application of 8 C.F.R. § 1003.19(i)(2)—that the regulation comports with due process. *See, e.g., Hasan v. Crawford*, No. 1:25-CV-1408 (LMB/IDD), 2025 WL 2682255, at *11–*13 (E.D. Va. Sept. 19, 2025) (latest such case, which relies in part on several earlier decisions reaching the same conclusion). However, the Court never reaches that issue in this case. Consequently, Vargas Lopez's First and Third Causes of Action challenging the automatic-stay provision are denied as moot.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Vargas Lopez's Petition for Writ of Habeas Corpus is denied.

Dated this 30th day of September, 2025.

---

Even if Vargas Lopez is subject to § 1226(a) in addition to § 1225(b), this Court sees no reason why the DHS may not choose to detain Vargas Lopez under the statute that does not allow for release on bond, § 1225(b). Indeed, in the area of immigration where the executive has considerable discretion, the executive may choose to pursue this civil action in any manner allowed by applicable law.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge